James A. Hunter
S.D.N.Y. Bar No. JH–1910
LAW OFFICE OF JAMES A. HUNTER
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, Pennsylvania 19428
Phone: +1 (484) 214-4697
Fax: +1 (646) 462-3356
Email: hunter@hunterkmiec.com

*Counsel for Plaintiff Calenture, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CALENTURE, LLC,<br><br>Plaintiff,<br><br>– v. –<br><br>SOFINNOVA VENTURE PARTNERS X, L.P., SOFINNOVA MANAGEMENT X, L.P., and SOFINNOVA MANAGEMENT X-A, L.L.C.,<br><br>Defendants,<br><br>– and –<br><br>VERA THERAPEUTICS, INC.,<br><br>Nominal Defendant. | ECF CASE<br><br>No. 24-4194<br><br>COMPLAINT FOR RECOVERY OF “SHORT-SWING” PROFIT UNDER 15 U.S.C. § 78p(b)<br><br>JURY DEMAND |

Plaintiff Calenture, LLC (“Plaintiff”), by its undersigned counsel, pleads for its Complaint as follows:

**INTRODUCTION**

1. This is an action to recover more than $6.4 million in profit realized in violation of Section 16(b) of the Securities Exchange Act of 1934, as amended (the “Act”), 15 U.S.C. § 78p(b).

2. Section 16(b) was Congress's original response to insider trading and, for many years, the only express regulation of insider trading under federal law. The statute was enacted "[f]or the purpose of preventing the unfair use of information which may have been obtained by [an insider] by reason of his relationship to the issuer." 15 U.S.C. § 78p(b).

3. The statute applies to every director or officer of an issuer with a class of equity securities registered under Section 12 of the Act. *Id.* § 78p(a). It also applies to every "beneficial owner" of more than 10% of any such class. *Id.*

4. Under Section 16(b), these statutory insiders must turn over to the issuer any profit they realize on any purchase and sale, or sale and purchase, of the issuer's equity securities within any period of less than six months. *Id.* § 78p(b). If an insider fails to return this "short-swing" profit, the statute empowers the issuer, or "the owner of any security of the issuer," to bring suit to recover it. *Id.*

5. Liability under Section 16(b) is strict. The issuer has the right to recover the profit from a short-swing transaction "irrespective of any intention on the part of [the insider] . . . in entering into such transaction." *Id.* Recovery never depends on proof of scienter, a breach of duty, or the actual misuse of inside information. *See Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972).

6. Plaintiff, a stockholder of Nominal Defendant Vera Therapeutics, Inc. ("Vera"), brings this action under Section 16(b) of the Act against three related Vera investors, Defendants Sofinnova Venture Partners X, L.P. (the "Sofinnova Fund"), Sofinnova Management X, L.P. (the "Management Partnership"), and Sofinnova Management X-A, L.L.C. (the "Management Company" and, collectively with the

Sofinnova Fund and the Management Partnership, the "Sofinnova Defendants").

7. At all relevant times, the Sofinnova Defendants were statutory directors of Vera, having deputized Maha Katabi, Ph.D., CFA ("Katabi") as their representative on Vera's board. Katabi wears two hats, serving simultaneously as a Vera director and a portfolio manager of the Sofinnova Fund. The Sofinnova Defendants seated their portfolio manager on the issuer's board under a 2020 agreement with Vera, and Katabi has performed these parallel roles continuously since then.

8. While represented on Vera's board by Katabi, the Sofinnova Defendants realized more than $6.4 million in profit from the Sofinnova Fund's purchases and sales of Vera's Class A common stock within a single period of less than six months.

9. Under Section 16(b), that profit is Vera's lawful property, which the Sofinnova Defendants are strictly liable to account for and repay.

**JURISDICTION**

10. The Court has jurisdiction over this action under Section 27 of the Act, 15 U.S.C. § 78aa, and under 28 U.S.C. § 1331.

11. Venue lies in this District under Section 27 of the Act because the transactions described in paragraphs 70-71 below were either negotiated and performed through underwriters located in this District or were executed through the facilities of The Nasdaq Stock Market LLC, a national securities exchange registered under Section 6 of the Act, 15 U.S.C. § 78f, and located in this District.

## THE PARTIES

### The Parties to This Action

12. Plaintiff Calenture, LLC is a limited liability company formed under the law of the State of New York with a principal place of business located in New York, New York.

13. Defendant Sofinnova Fund is a limited partnership formed under the law of the State of Delaware with a principal place of business located in Menlo Park, California. All of the Vera securities purchased and sold by the Sofinnova Defendants were held directly by the Sofinnova Fund.

14. Defendant Management Partnership is a limited partnership formed under the law of the State of Delaware with a principal place of business located in Menlo Park, California. At all relevant times, the Management Partnership served as a general partner of the Sofinnova Fund and directly exercised voting and investment power over all Vera securities in the Sofinnova Fund's portfolio.

15. Defendant Management Company is a limited liability company formed under the law of the State of Delaware with a principal place of business located in Menlo Park, California. At all times since at least February 2023, the Management Company served as a general partner of the Management Partnership and, through the Management Partnership, exercised voting and investment power over all Vera securities in the Sofinnova Fund's portfolio.

16. Nominal Defendant Vera is a corporation formed under the law of the State of Delaware with a principal place of business located in Brisbane, California. At all relevant times, Vera's Class A common stock was registered under Section 12(b) of the Act, 15 U.S.C. § 78*l*(b), and was listed for trading on the Nasdaq Global Select

Market. This action is brought in the right and for the benefit of Vera, which is named as a nominal defendant solely to ensure that all necessary parties are before the Court.

**Other Relevant Parties**

17. Katabi is a natural person who served at all relevant times as a Vera director, a portfolio manager of the Sofinnova Fund, and a managing member of the Management Company. Vera's filings with the SEC identify her as "a general partner at Sofinnova Venture Partners X, L.P." She is described on the website of Sofinnova Investments, Inc. as "a General Partner of Sofinnova Investments" and "an experienced investor with over two decades of managing public and private biotech companies."

**THE FACTS**

**The Insiders**

18. The Sofinnova Defendants are venture capitalists focused on the biopharmaceutical industry.

19. They first invested in Vera in October 2020 when Vera, then privately owned, raised $80 million from the sale of its Series C Convertible Preferred Stock (the "Series C").

20. The Sofinnova Defendants led the Series C round along with three other investors. Each of these four investors purchased $15 million of the $80 million in Series C offered.

21. These $15 million investments represented substantial wagers on a clinical-stage biopharmaceutical company with no revenue. Investments like these could not be undertaken passively but demanded hands-on involvement in Vera's management.

22. To protect their investments, the Sofinnova Defendants and the other three principal Series C investors negotiated with Vera to secure board representation and other governance and economic rights.

23. Some of these rights were spelled out in a Second Amended and Restated Voting Agreement dated October 29, 2020 (the "Voting Agreement").

24. The Voting Agreement, which has not been publicly filed, gave each of the four principal Series C investors the right to designate a member of Vera's board of directors and obligated the investors to vote their Vera shares in favor of one another's designees.

25. Pursuant to the Voting Agreement, the Sofinnova Fund designated Katabi as its representative on Vera's board, and she has served continuously in that role since October 2020.

26. The four principal investors in the Series C round also entered into a Second Amended and Restated Investors' Rights Agreement dated October 29, 2020 (the "Investors' Rights Agreement").

27. A copy of the Investors' Rights Agreement, in the form in which Vera filed it with the SEC, is attached as Exhibit A to this Complaint.

28. The Investors' Rights Agreement obligated each of the investors to "keep confidential and . . . not disclose, divulge, or use for any purpose (*other than to monitor its investment in the Company*) any confidential information obtained from the Company pursuant to the terms of this Agreement." Ex. A § 3.5 (emphasis added).

29. Section 3.6 of the agreement elaborated on the investors' rights to receive and use confidential information from Vera:

> The Company understands and acknowledges that in the regular course of their respective businesses, certain Professional Investors (including, without limitation, Abingworth, Longitude, Sofinnova and Surveyor) and their respective Affiliates will or may invest in companies that have issued securities that are publicly traded (each, a "**Public Company**"). Accordingly, the Company covenants and agrees that it shall (a) not provide any material non-public information about a Public Company to Surveyor or any representative or board observer of Surveyor, and (b) notify any director, observer or other representative affiliated with any Professional Investor (other than Surveyor) of the Company's intent to disclose material non-public information about a Public Company prior to making such disclosure. In addition, the Company acknowledges and agrees that *in no event shall the confidentiality and non-use obligations of any Professional Investor (including, without limitation, Abingworth, Longitude, Sofinnova and Surveyor) hereunder in any manner be deemed or construed as limiting any Professional Investor or its representatives' (or any of their respective Affiliates) ability to trade any security of a Public Company.*

*Id.* § 3.6 (second emphasis added).

30. Katabi signed the Investors' Rights Agreement on behalf of the Sofinnova Fund. Her signature block identifies her as the "Managing Member" of Sofinnova Management X, L.L.C., the predecessor entity to the Management Company, which served as the "General Partner" of the Sofinnova Fund.

31. Vera completed its IPO in May 2021, just over six months after the Series C round.

32. The Voting Agreement terminated upon the completion of the IPO, but Katabi's board service did not.

33. Katabi continued to represent the Sofinnova Defendants on Vera's board after the IPO, and she remains a director to this day. Her current term as a board member does not end until 2026.

34. Most of the Investors' Rights Agreement, including Sections 3.5 and 3.6 described above, also survived the IPO and remains in force.

35. So Vera continues to have the power under Section 3.6 of the Investors' Rights Agreement to "provide . . . material non-public information" to the Sofinnova Fund or its "representative."

36. Section 3.5 of the agreement continues to guarantee the Sofinnova Fund's right to use confidential information for the purpose of "monitor[ing] its investment in [Vera]."

37. And Section 3.6 of the agreement continues to repudiate any construction of the agreement's "confidentiality and non-use obligations" that would "limit[] any Professional Investor or its representatives' (or any of their respective Affiliates) ability to trade any security of a Public Company."

38. Katabi is one of the "representatives" of the Sofinnova Fund whose license to trade is protected by Sections 3.5 and 3.6 of the Investors' Rights Agreement, and she relies on this language to make trading decisions on behalf of the Sofinnova Fund.

39. When Vera first went public in May 2021, the Sofinnova Fund had three portfolio managers. In a statement of beneficial ownership on Schedule 13D filed with the SEC by the Sofinnova Fund shortly after the IPO, the fund identified those three portfolio managers as Katabi, Dr. Michael F. Powell, and Dr. James I. Healy.

40. Dr. Powell left the Sofinnova Defendants no later than February 2023. Every amendment to the Schedule 13D filed by the Sofinnova Defendants since

then has identified Katabi and Dr. Healy as the sole managing members of the Management Company.

41. Copies of the statements that the Sofinnova Defendants filed on Schedule 13D with respect to Vera's Class A common stock are attached as Exhibits B through F to this Complaint.

42. None of these statements discloses any limitation on Katabi's power to participate in decisionmaking related to the Sofinnova Fund's investment in Vera.

43. On the contrary, the statements define "Reporting Persons" to include Katabi and represent that any transactions in Vera's Class A common stock will be based in part on "the Reporting Persons' . . . ongoing evaluation of the Issuer's business, financial condition, operations and prospects."

44. All of the statements filed by the Sofinnova Defendants on Schedule 13D since February 2023 identified Katabi and Dr. Healy as the only natural persons who "may be deemed to have shared dispositive power" over the Class A common stock held by the Sofinnova Fund.

45. Katabi's relationship with the Sofinnova Defendants was structured to ensure that she was not just legally but economically representative of the Sofinnova Fund.

46. As is common in the venture capital industry, Katabi's performance as a portfolio manager was incentivized through fees and fund interests that tied her overall compensation to the fund's return on its investments. This arrangement

aligned her interests with those of the fund and encouraged her to use information obtained from Vera for the fund's benefit.

47. That Katabi had an interest in the Sofinnova Fund's returns is evident from the fact that she personally repaid to Vera a portion of the profit realized by the fund from the transactions alleged herein. *See* Ex. K ("Dr. Katabi is liable for short-swing profits to the extent of her pecuniary interest in the Purchase and such portion of the sales reported herein. Dr. Katabi has agreed with the Issuer to disgorge her short-swing profits attributable to the matching of the Purchase with the sales reported herein.").

48. All transactions in Vera's equity securities by the Sofinnova Defendants over the past year were made under Katabi's purview as a "general partner" of the Sofinnova Fund, and under the co-direction of her and Dr. Healy as the joint managers of the fund.

49. The market understood that Katabi was representing the Sofinnova Defendants on Vera's board and could use information obtained from Vera to make trading decisions for the Sofinnova Fund.

50. When Vera conducted a registered public offering of its stock this past January, the underwriters of the offering required all of Vera's officers and directors to enter into lock-up agreements barring them from selling Vera's stock within 60 days of the date of the prospectus supplement for the offering.

51. The underwriters also demanded and received a 45-day lock-up from, in the words of the prospectus supplement, "certain stockholders affiliated with our directors."

52. These “certain stockholders” included the Sofinnova Fund, yet no lock-up was required of stockholders without representation on Vera’s board, even though some of those stockholders owned more stock than the Sofinnova Defendants.

53. The underwriters intuited, and knew the market would infer, that sales by an investor with a board seat relied at least in part on material nonpublic information that could not be likewise imputed to an investor — even a very large investor — without board representation.

54. The Sofinnova Defendants agreed to this lock-up arrangement. They swore off selling Vera’s stock during the 45 days after the offering, and they did so only because Katabi served on Vera’s board and even as larger investors were free to sell.

55. The website for Sofinnova Ventures, Inc. continues to tout its Vera investment, listing positive Vera press releases and other Vera information on the site under the heading “Portfolio News.”

56. One of the linked stories is a November 2023 article entitled “2023’s Fiercest Women in Life Sciences.” The article profiles Katabi and her work at the Sofinnova Defendants, noting that she “led the charge on Vera Therapeutics.”

57. Sprinkling in quotes from Katabi, the article explains that “[a]t Sofinnova, the team ‘really digs deep’ into the projects they invest in,” and “partner[s] with ‘fun’ management teams.”

58. Katabi added, “To me, what’s important as a general partner is to realize exactly what type of inputs you need to make the best possible investment decisions.”

59. A copy of the article is attached as Exhibit G to this Complaint.

60. Reporting on Katabi's other public statements tends to confirm her role as an active representative of the Sofinnova Defendants rather than merely a freelancer who happens to be associated with a venture fund.

61. When asked in a March 2024 interview about "[w]hat defines your portfolio," Katabi answered, "We work closely with management teams to establish a clinical development plan that aligns with regulatory standards and follow a clearly defined regulatory path."

62. Continuing in the first person plural, Katabi promised that "[o]ur team will continue to partner with entrepreneurs and pharmaceutical companies to take transformative therapies from the lab to reach patients."

63. Katabi made clear that the "partnership" does not end when a portfolio company goes public: "We actively partner with entrepreneurs across all stages of company formation."

64. Another recent interview opened with the following observation:

> Maha Katabi has had a great three months. The Sofinnova general partner has been in the boardroom of two recent M&A exits: radiopharmaceuticals maker RayzeBio, sold to Bristol Myers Squibb, and asthma startup Aiolos Bio, to GSK.

65. RayzeBio, Inc. was a Nasdaq-listed company at the time it was acquired, so evidently "[t]he Sofinnova general partner" remained "in the boardroom" even after the issuer went public.

66. Copies of the interviews described in paragraphs 61-65 above are attached as Exhibits H and I to this Complaint.

67. In sum, the terms and circumstances of the Sofinnova Defendants' relationship with Katabi and Vera establish that (a) the Sofinnova Defendants placed

Katabi as their representative on Vera' board, where she had regular access to confidential information; (b) the Sofinnova Fund had a contractual right to use the confidential information obtained by Katabi "to monitor its investment in the Company" and "trade any security of a Public Company"; and (c) the Sofinnova Defendants enjoyed the actual use of that information because Katabi served as one of the fund's two portfolio managers and exercised shared dispositive power over the fund's assets.

68. As a result of these relationships and the privileged access they afforded the Sofinnova Defendants to material nonpublic information about Vera, each of the Sofinnova Defendants was deemed a director by deputization at all relevant times, and thus was subject to Section 16(b) of the Act.

**The Purchases and Sales**

69. While subject to Section 16(b) of the Act, the Sofinnova Fund purchased and sold millions of dollars' worth of Vera's equity securities, all within a single period of less than six months.

70. On January 30, 2024, the Sofinnova Fund purchased 161,290 shares of Vera's Class A common stock at a price of $31.00 per share from the underwriters of a registered public offering.

71. Less than six months later, the Sofinnova Fund sold Vera's equity securities over the open market as follows:

(a) On March 21, 2024, the Sofinnova Fund sold 32,756 shares of Vera's Class A common stock at a weighted average price of $43.00 per share.

(b) Also on March 21, 2024, the Sofinnova Fund sold 21,918 shares of Vera's Class A common stock at a price of $44.00 per share.

(c) Also on March 21, 2024, the Sofinnova Fund sold 12,617 shares of Vera's Class A common stock at a weighted average price of $45.52 per share.

(d) Also on March 21, 2024, the Sofinnova Fund sold 13,718 shares of Vera's Class A common stock at a weighted average price of $46.18 per share.

(e) On March 22, 2024, the Sofinnova Fund sold 413,450 shares of Vera's Class A common stock at a weighted average price of $40.51 per share.

(f) On March 25, 2024, the Sofinnova Fund sold 340,000 shares of Vera's Class A common stock at a weighted average price of $40.50 per share.

72. The transactions alleged in paragraphs 70-71 above were disclosed on Statements of Changes in Beneficial Ownership on Form 4 that Katabi filed with the SEC on February 1 and March 25, 2024.

73. Copies of those statements are attached as Exhibits J and K to this Complaint.

74. The timing of the Sofinnova Defendants' trades, particularly the sales, proved felicitous. Their best-timed sales fetched prices not terribly far below the all-time high of $50.78 per share that the stock hit on March 1.

75. The Sofinnova Defendants might have received even higher prices had they not been locked up for 45 days following the January 30 public offering.

76. The stock price slid after the Sofinnova Defendants' sales. On May 31, 2024, Vera's Class A common stock closed at $37.99 per share.

77. The price now lies more than 5% below where the Sofinnova Defendants sold in March, but well above where they purchased just a few months earlier.

**The Proft and Demand**

78. From the transactions alleged in paragraphs 70-71 above, the Sofinnova Defendants realized a profit currently estimated at $6,407,648.39.

79. Discovery will establish the exact amount of the profit realized based on the actual sale prices received by the Sofinnova Fund for the most expensive lots of shares sold.

80. The Sofinnova Fund had a direct pecuniary interest in the profit realized because it held the shares traded, and thus paid the price for and received the proceeds of any shares purchased and sold.

81. Each of the Management Partnership and Management Company had an indirect pecuniary interest in the profit realized by the Sofinnova Fund by virtue of holding, directly or indirectly, general partnership interests in the Sofinnova Fund.

82. Upon information and belief, and as is customary in the venture capital industry, the Management Partnership and Management Company also owned limited partnership interests in the Sofinnova Fund and received fees based on the performance of the fund's portfolio. Through these interests and fees, the Management Partnership and Management Company enjoyed the opportunity to profit indirectly from the Sofinnova Fund's investments.

83. Plaintiff understands that Katabi has repaid to Vera an undisclosed amount of profit, representing Katabi's pecuniary interest in the profit realized by the Sofinnova Defendants. The remainder of the profit realized by the Sofinnova Defendants has not been repaid.

84. Plaintiff made demand on Vera for recovery of the profit realized by the Sofinnova Defendants on March 26, 2024.

85. More than 60 days have passed since that demand was sent, and Vera has not brought suit or otherwise sought recovery of the profit realized.

86. Further delay would be a futile gesture, Vera having advised Plaintiff's counsel by letter of May 20, 2024 that it does not intend to pursue recovery.

**SOLE CLAIM FOR RELIEF:**
**RECOVERY OF SHORT-SWING PROFIT UNDER 15 U.S.C. § 78p(b)**
**(AGAINST EACH SOFINNOVA DEFENDANT)**

87. Vera realleges and incorporates by reference the allegations in paragraphs 1-86 above.

88. Section 16(b) of the Securities Exchange Act of 1934, as amended, reads in pertinent part as follows:

> For the purpose of preventing the unfair use of information which may have been obtained by [a 10 percent] beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months. Suit to recover such profit may

> be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.

15 U.S.C. § 78p(b).

89. At all relevant times, each Sofinnova Defendant was a statutory director of Vera and subject to Section 16(b) of the Act.

90. While subject to Section 16(b) of the Act, the Sofinnova Fund purchased and sold Vera's equity securities as further described herein.

91. The Sofinnova Fund's sales of Vera's equity securities were made at higher prices than the fund's purchases of Vera's equity securities.

92. All of the Sofinnova Fund's purchases and sales of Vera's equity securities were made within a single period of less than six months.

93. Each Sofinnova Defendant had a direct or indirect pecuniary interest in all of the purchases and sales of Vera's equity securities described herein.

94. Under the "lowest-in, highest-out" method for computing realized profit pursuant to Section 16(b) of the Act, the Sofinnova Defendants realized a profit of not less than $6,407,648.39 from their transactions in Vera's equity securities described herein.

95. Under Section 16(b) of the Act, the profit realized by the Sofinnova Defendants as described herein inured to Vera and is Vera's lawful property, recoverable by Plaintiff in its stead, Vera having declined to seek recovery of the same despite due demand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Court for judgment:

(a) Requiring each Sofinnova Defendant to account for and pay over to Vera the short-swing profit realized and retained by such Sofinnova Defendant in violation of Section 16(b) of the Act in an amount not less than $6,407,648.39, together with appropriate pre- and post-judgment interest and the costs of this suit;

(b) Awarding Plaintiff its costs and disbursements including reasonable attorney's, accountant's, and expert witness fees; and

(c) Granting Plaintiff such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on every question so triable.

Dated: May 31, 2024

Respectfully submitted,

/s/ James A. Hunter

James A. Hunter
S.D.N.Y. Bar No. JH–1910
LAW OFFICE OF JAMES A. HUNTER
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, Pennsylvania 19428
Phone: +1 (484) 214-4697
Fax: +1 (646) 462-3356
Email: hunter@hunterkmiec.com

*Counsel for Plaintiff Calenture, LLC*